634 So.2d 893 (1993)
Griffin W. BATISTE, Jr.
v.
Mr. and Mrs. George P. BEVAN, et al.
No. CA 92 2309.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
*894 Allan C. Breslin, Covington, Gary P. Koederitz, Baton Rouge, for plaintiff-appellant Griffin Batiste.
Michael P. Colvin, Baton Rouge, for defendant-appellee State Farm Fire and Cas. Co.
Before CARTER, GONZALES and WHIPPLE, JJ.
WHIPPLE, Judge.
This is an appeal by plaintiff, Griffin W. Batiste, Jr., from a judgment of the trial court granting summary judgment in favor of defendants, Mrs. George P. Bevan and State Farm Fire and Casualty Company (State Farm). For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On August 8, 1990, plaintiff, a tree surgeon, noticed a dead tree in the yard of Mr. and Mrs. George Bevan, as he passed the Bevans' home. In an effort to solicit business, plaintiff knocked on the Bevans' door, introduced himself to Mrs. Bevan as a tree surgeon, and advised her of the dead tree in their backyard which was leaning toward the neighbor's house. Plaintiff negotiated with Mrs. Bevan to cut down the dead tree and several others, and initially agreed to cut down four or five trees for a price of $250.00.
After felling the trees, plaintiff approached Mrs. Bevan and informed her that a tree by the swimming pool was bug-infested. Plaintiff testified that the bugs looked like "little *895 termites" and that there were small pin holes in the bark of the tree where the "bugs were going into the tree." Although plaintiff suggested to Mrs. Bevan that he could spray the tree to treat it for insects, Mrs. Bevan requested that he cut down the tree, stating that there were too many trees around the pool anyway. Plaintiff agreed to cut down the bug-infested tree for an additional $100.00 fee.
Plaintiff testified that he was particularly careful when he cut this tree because he knew that bug-infested trees are sometimes hollow or rotten inside. When plaintiff made his initial cut in the tree, the tree fell against another tree, instead of falling to the ground. Thus, to make the tree fall to the ground, plaintiff had to perform a procedure known as "walking a tree down," whereby cuts are made on the underside of the tree. As he was making his third cut on the underside of the tree, plaintiff hit a hollow spot in the tree, causing the bottom portion of the tree to "kick up." This portion of the tree struck plaintiff, causing serious injury to his left leg.
On August 5, 1991, plaintiff filed suit against Mr. and Mrs. Bevan and their insurer, State Farm, alleging negligence and strict liability theories of recovery. Mrs. Bevan and State Farm filed a motion for summary judgment on May 29, 1992.[1] The trial court rendered judgment in favor of Mrs. Bevan and State Farm, granting their motion for summary judgment and dismissing plaintiff's suit against them with prejudice.[2] From this judgment, plaintiff appeals.

SUMMARY JUDGMENT
Generally, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La. 1982). The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991).
Summary judgments are not favored, and any reasonable doubt should be resolved against the mover. In determining whether all material issues have in fact been disposed of, any reasonable doubt is to be resolved against the granting of summary judgment and in favor of trial on the merits. Penalber v. Blount, 550 So.2d 577, 583 (La. 1989); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Duncan v. Balcor Property Management, Inc., 615 So.2d 985, 988 (La. App. 1st Cir.), writ denied, 617 So.2d 936 (La.1993).
Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts in determining whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).

NEGLIGENCE AND STRICT LIABILITY
Plaintiff brought this suit under both negligence and strict liability theories. Although the two theories constitute separate and distinct theories of liability for relief from damages resulting from a dangerous condition on land, the analysis that courts use when applying the two theories is similar. *896 Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285, 1288 (La.1991). Under either theory, the plaintiff must prove that: (1) the thing which caused the damage was in the custody of the defendant; (2) the thing was defective because it had a condition that created an unreasonable risk of harm to the plaintiff; and (3) the defective condition of the thing caused the plaintiff's injuries. Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263, 1265-66 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985).
The difference between the theories is the proof of the defendant's knowledge. To establish negligence, the plaintiff must prove that the defendant knew or should have known of the defect. Under a strict liability theory, however, the plaintiff need not prove such knowledge on the part of the defendant. Carter, 459 So.2d at 1265. Under both theories, the absence of an unreasonably dangerous condition of the thing implies an absence of a duty on the part of the defendant. Oster, 582 So.2d at 1288. Thus, absent proof of a defect, a claim made under either theory must fall. See Southeastern Fidelity Insurance Company v. Cashio, Cochran & Associates, Inc., 505 So.2d 141 (La.App. 4th Cir.1987).
The critical issue in the instant case is whether the insect-infested tree constituted a defective thing under the circumstances of this case. A defect is a flaw or fault which creates an unreasonable risk of harm to others. Southeastern Fidelity Insurance Company, 505 So.2d at 142. Under either of plaintiff's theories of recovery, his action would fail if the insect-infested tree did not present an unreasonable risk of harm to him. The unreasonable risk of harm criterion entails a myriad of considerations and is not a simple rule of law to be applied mechanically. Oster, 582 So.2d at 1288. The obligation placed upon a landowner to maintain his land free from defects does not encompass every injury that occurs on his land. Rather, a court utilizing the unreasonable risk of harm analysis must determine whether the duty imposed upon the landowner was placed upon him to prevent the type of accident involved in the case before the court. Oster, 582 So.2d at 1289.
In determining whether a particular risk is unreasonable, the court must decide "which risks are encompassed by the codal obligations from the standpoint of justice and social utility" and "must consider the moral, social and economic values [involved] as well as the ideal of justice in reaching an intelligent and responsible decision." Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983).
Plaintiff was an experienced tree surgeon who actively solicited the job he performed for the Bevans. He had worked as a tree surgeon for eight years before the accident in question and had been working "in the woods" clearing lots for fourteen years. Although plaintiff held no certification as a tree surgeon, he testified that no certification was required. Plaintiff considered himself to be an expert tree surgeon, stating that he was one of the best tree surgeons in the parish.
Moreover, plaintiff had knowledge that the tree was infested with insects prior to his cutting the tree down. Plaintiff admitted that he saw decay where the insects were infested and small pin holes all over the bark. Also, as a tree surgeon, he was aware of the potential for an infested tree to be hollow or rotten on the inside, a condition which he noted could start at the top of the tree and work its way down. In his work experience, plaintiff had dealt with hollow trees previously. Thus, the insect-infested tree presented an obvious risk of decay to an experienced tree surgeon, and, as such, was not unreasonably dangerous as to plaintiff. See Desormeaux v. Audubon Insurance Company, 611 So.2d 818, 820-21 (La.App. 3rd Cir.1992), writ not considered, 613 So.2d 966 (La.1993), writ denied, 613 So.2d 1002 (La.1993); see also Luttrell v. International Paper Company, 532 So.2d 389, 392-93 (La.App. 3rd Cir.), writ denied, 533 So.2d 384 (La.1988).
Moreover, considering that plaintiff was hired for the very purpose of removing the bug-infested tree, a finding that it was unreasonably dangerous as to him would contravene the considerations of justice, social utility and moral, social and economic values as *897 set forth by the Louisiana Supreme Court in Entrevia. See Eldridge v. Bonanza Family Restaurant, 542 So.2d 1146, 1150 (La.App. 3rd Cir.1989). While Mrs. Bevan may have partially based her decision to have the tree removed on the fact that there were too many trees around the pool, plaintiff admitted that Mrs. Bevan's principal reason for having him remove the tree was the infested condition of the tree. The social utility of the Bevans' actions in having a potentially dangerous tree removed from their property by a tree surgeon cannot be denied.
As the United States Fifth Circuit Court of Appeals aptly stated in Ladue v. Chevron, U.S.A., Inc., 920 F.2d 272, 278 (5th Cir.1991): "That incentive [to repair a potentially dangerous condition] would be destroyed if owners are held strictly liable when repairmen are injured by the very condition they are hired to repair."
Considering the foregoing, we conclude that the insect-infested tree which plaintiff was hired to remove did not present a defect or unreasonable risk of harm to plaintiff. Accordingly, no genuine issue as to material fact exists concerning the defendants' liability under a theory of negligence or strict liability. Thus, defendants were entitled to judgment as a matter of law. See Eldridge, 542 So.2d at 1150.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment, in favor of Mrs. George Bevan and State Farm Fire and Casualty Company, and against Griffin Batiste, dismissing his claims against them with prejudice, is affirmed. Costs of this appeal are assessed against plaintiff, Griffin Batiste.
AFFIRMED.
NOTES
[1] Prior to the filing of the motion for summary judgment, Mr. George Bevan filed a voluntary petition for relief in the United States Bankruptcy Court, under Title 11, Chapter 7 of the U.S.Code, automatically staying these proceedings against him.
[2] The record contains two identical judgments signed by the trial court, dated August 28, 1992, and September 16, 1992.