769 So.2d 82 (2000)
Christine Cuevas, Wife of/and Jose R. CUEVAS, Individually and as Administrators of the Estates of Their Minor Children, Jose Cuevas, Jr., Joseph Cuevas and Nicholas Cuevas
v.
The CITY OF NEW ORLEANS and ABC Insurance Company.
No. 99-CA-2542.
Court of Appeal of Louisiana, Fourth Circuit.
June 21, 2000.
*83 Kenneth J. Berke, Berke & Bolner, and Lawrence J. Duplass, Duplass, Zwain & Bourgeois, Metairie, Louisiana, Counsel for Plaintiffs/Appellants.
Mavis Early, City Attorney, Nolan Lambert, Chief Deputy City Attorney, Richard L. Root, Assistant City Attorney, New Orleans, Louisiana, Counsel for Defendant/Appellee.
*84 Court composed of Judge MIRIAM G. WALTZER, Judge MOON LANDRIEU, and Judge DENNIS R. BAGNERIS, Sr.
BAGNERIS, Judge.
This case arises out of a slip-fall accident that involved Jose R. Cuevas on July 16, 1996. Cuevas was employed and working with Fuelman, Inc., on August 16, 1996, when the accident occurred. Cuevas was dispatched to service a Fuel Station located at 2500 Wall Boulevard, in Algiers, Louisiana, which station is owned by the City of New Orleans. Upon arrival, Cuevas testified that he slipped on a hose, diesel fuel, and debris surrounding the terminal. Cuevas testified that, as he began to fall, he reached out to break his fall and caught onto a trash barrel. Cuevas' hand descended into the trash barrel and he sustained a cut to his hand from the glass and other sharp objects inside of the trash barrel. Cuevas sought immediate medical attention at West Jefferson Hospital and was admitted to the hospital. On August 17, 1996, Cuevas underwent surgery to repair nerves and tendons in his right hand.
Cuevas filed a lawsuit against the City and its insurer. Cuevas claimed his fall and the injuries he sustained were due to the negligence of the City of New Orleans. After a trial, the trial judge ruled in favor of the City of New Orleans. The trial judge in written reasons found that Cuevas failed to adequately prove the elements necessary to impose liability upon the City of New Orleans either under the theory of negligence or strict liability. Cuevas appeals from the trial court's judgment.
On appeal, Cuevas contends that trial court erred in failing to find that the City of New Orleans was liable under the theory of negligence and/or strict liability. The City answered the appeal and argues that the trial court was correct in its finding that Cuevas failed to prove the elements of his cause of action.

STANDARD OF REVIEW
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court set forth a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Id. at 1127.
This test dictates that the appellate court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The appellate court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973, 976 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La. 1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal *85 may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973, 976 (La.1991), (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716, 724(La.1973). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
This is not to suggest, however, that courts of appeal are not required to review findings of fact by the trial court. To the contrary, as the Supreme Court stated in Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, pp. 8-9 (La.7/5/94), 639 So.2d 216, 221:
Notwithstanding the Court's earlier guidance to reviewing courts in Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993), it was not our purpose in that case to mandate that the trial court's factual determinations cannot ever, or hardly ever, be upset. Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. Of course, the reviewing court may not merely decide if it would have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter's judgment is not clearly wrong or manifestly erroneous. Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support. (Notes omitted)

LIABILITY
Cuevas asserts that the City's liability might be found in either the theory of negligence under La.Civ.Code art. 2315 or the theory of strict liability under La. Civ.Code art. 2317. In either case, "liability hinges on whether the defendant has breached his duty to the plaintiff." Hunter v. Dep't of Transp. & Dev., 93-0235 (La.7/1/93) 620 So.2d 1149, 1150. In order to determine whether liability exists, a duty-risk analysis is used. Syrie v. Schilhab, 96-1027, p. 4 (La.5/20/97); 693 So.2d 1173, 1176. Under this analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the defendant breached the duty, and the risk of harm was within the scope of protection afforded by the duty breached. Under the duty-risk analysis, all four of these inquiries must be answered in the affirmative for the plaintiff to recover. Id. at p. 5, 693 So.2d at 1177.

NEGLIGENCE
The first element in the duty-risk analysis is duty. Whether a duty is owed is a question of law. Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848, p. 5 (La. App. 1 Cir. 6/24/94), 638 So.2d 1168, 1170. Simply put, the inquiry is whether the plaintiff has any lawstatutory, jurisprudentially or arising from general principles of faultto support his claim. Faucheaux v. Terrebonne Consolidated Government, 92-0930 (La.3/25/93), 615 So.2d 289, 292.
*86 The duty owed by a defendant to protect against injury is a question of law and is decided by the trial court in the first instance and the appellate court on review. Hartford Accident & Indemnity Co. v. Illinois Central Gulf Railroad Co., 598 So.2d 1107, 1108 (La.App. 4 Cir.) writ den. 605 So.2d 1148 (La.1992). The owner of immovable property has a duty to keep the property in a reasonably safe condition and must discover any unreasonably dangerous condition or warn potential victims of its existence. Bradford v. Louisiana Downs, Inc., 606 So.2d 1370,1374 (La.App. 2 Cir.1992). The plaintiff must prove the owner knew or should have known of the risk. The property owner is not the insurer of the premises, but must act reasonably in view of the probability of injury. Id. at 1375.
When considering the duty owed by a landowner, the status of the injured person as an invitee or trespasser is relevant but not determinative. Cates v. Beauregard Elec. Co-op., Inc., 328 So.2d 367, 371 (La.1976), cert den., 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); Melerine v. State, 505 So.2d 79 (La.App. 4th Cir.), writ den. 507 So.2d 226 (La.1987). The proper test is whether the landowner acted as a reasonable man in view of the probability of the injury to others in the management of his property. Melerine, at 80.
On appeal, Cuevas contends that the City owed him and others a duty to keep its property in a reasonable safe condition and to discover unreasonably dangerous conditions or warn victims of their existence. Cuevas contends that the condition of the City's facility and the necessity for him to traverse an area poorly lit and littered with trash, debris, and spilled fuel was a breach of duty by the City.
At trial, Cuevas testified that he slipped and fell on some unknown object or substance that was near the terminal when he stepped out of the truck. He concluded that he slipped because of spilled fuel and a hose lying on the ground. He offered and introduced into evidence photos that he claimed depicted the condition of the facility on the day of the accident. Cuevas took these photos several days after the accident.
Louis Bicocchi, the City Fleet Administrator, testified that his department conducted scheduled inspections and clean-ups at the Algiers's facility. Bicocchi testified that prior to the August 16, 1996 accident, he was not aware of any problems or complaints regarding fuel leakage, debris, and/or trash at the facility.
Vincent Giambrone, Fuel Service Supervisor testified by deposition that no one had ever complained that a dangerous condition existed because of spilled fuel at the Algiers' facility. In contrast, Cuevas testified that approximately thirty days prior to the accident he made a complaint to Giambrone regarding the dangerous condition that existed at the facility.
After reviewing the jurisprudence and the applicable law, we find that the City had a duty to maintain its properties and to protect citizens from unreasonable risk of harm that might be caused by unreasonably unsafe conditions. Further, the City had a duty to act as a reasonable person in the management of his property in view of the probability of injury to others. However, the evidence presented by Cuevas failed to show that the City breached this duty to maintain the Algiers' facility and to protect citizens from an unreasonable risk of harm that might have been caused by an unreasonably unsafe condition. Further, Cuevas presented no evidence that supported his contention that a dangerous condition existed on the day of the accident at the Algiers' Facility. Both Bicocchi and Giambrone contradicted Cuevas' testimony that he had reported the unsafe condition that he had observed at the facility. Both testified that they were not aware or had not received any reports from Cuevas of trash, debris or spilled fuel at the Algiers' facility.
Therefore, we find no merit to this assignment of error.

*87 STRICT LIABILITY
Cuevas contends the trial court erred in finding that the City was not liable under the theory of strict liability. In order to recover under strict liability, the plaintiff must prove that: (1) the thing which caused the damage was in the custody of the defendant: (2) the thing was defective because it had a condition that created an unreasonable risk of harm to the plaintiff, and (3) the defective condition of the thing caused the plaintiff's injuries. Lee v. Magnolia Garden Apartments, 96-1328 (La.App.1 Cir. 5/9/97), 694 So.2d 1142, 1150, writ den. 97-1544 (La.9/26/97); 701 So.2d 990. Under this theory, the absence of an unreasonably dangerous condition of the thing implies an absence of a duty on the part of the defendant. Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285, 1288 (La.1991). Thus, absent proof of a defect, a strict liability claim must fall. Batiste v. Bevan, 634 So.2d 893, 896 (La. App. 1 Cir.1993).
In the instant case, there is no dispute that the Algiers' facility was in the custody of the City at the time of the accident. However, the parties dispute how this accident occurred. Thus, the critical issue is whether a defect existed at the Algiers' Facility at the time of the accident that created a dangerous condition that presented an unreasonable risk of harm to persons on the premises.
A defect is a condition that creates an unreasonable risk of harm to persons on the premises Oster, 582 So.2d at 1288; Tillman v. Johnson, 94-0480, p. 5 (La.App. 1 Cir. 3/3/95); 652 So.2d 605, 609. However, not every minor imperfection or irregularity will give rise to liability. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Tupper v. State Farm Fire & Casualty Company, 553 So.2d 488, 491 (La.App.3rd Cir.1989).
In the present case, Cuevas testified that he parked near the terminal, selected his equipment, opened the car door, and turned to face the terminal and upon taking a second step slipped on a hose, fuel, paper, and debris surrounding the terminal. As he began to fall, he reached for the trash barrel to break his fall. His right hand descended into the trash barrel an he sustained a cut to his hand. Cuevas testified that he observed, trash, debris including medical gloves, syringes and I. V. needles lying near the pumps on the day of the accident.
Photographs taken by Cuevas of the Algiers' facility were admitted into evidence without objection. Cuevas took these photographs at some unspecified time after the accident. He contends the photographs depict the condition of the facility as it existed on the day of the accident. The City in its brief contends the photographs admitted into evidence by Cuevas were suspect. The City contends that the scene was "staged" and therefore that the photographs do not depict the scene as it existed on the day of the accident.
After careful review of the record in its entirety, we find that Cuevas failed to prove that there existed at the Algiers' Facility at the time of the accident a defect which created a dangerous condition that presented an unreasonable risk of harm, and that the defect caused Cuevas' injury. Thus, we find no error in the trial court's judgment.

CONCLUSION
Accordingly, we affirm the trial court's judgment.
AFFIRMED.